W. H. MURPHY, Assignee, etc., Appellant, v. W. R. WILSON, Respondent.

**St. Louis Court of Appeals, April 10, 1900.**

1. **Creditor: LIEN: EQUITY: ASSIGNEE: NOTICE.** A creditor having a lien upon a particular fund may in equity follow that fund in the hands of his creditor, or his assignee with notice, notwithstanding the debtor may have converted the fund into other property, real or personal, or both, but he can not do this without a lien nor can he ordinarily enforce his equity by the mere levy of an execution on the property in which the fund has been invested.

2. **Discovery of Assets: STATUTORY CONSTRUCTION.** The whole purpose of the statute to discover assets (secs. 3227, 3228, 3229 and 3230, R. S. 1899) is to compel the defendant in the execution to disclose, under oath, all the assets of his estate, and after the discovery to leave it to the judge or court to say, whether or not he has assets which may be levied on by execution in favor of the judgment creditor.

3. ———: ———: MORTGAGE: HOMESTEAD. In the case at bar the judge did not err in his judgment when he found that respondent had a right to use the money to pay the mortgage on his homestead, nor did he err when he ruled that the homestead was not subject to the execution and quashed the levy.

Appeal from the Pulaski Circuit Court.—*Hon. Leigh B. Woodside*, Judge.

AFFIRMED.

*Harrison & Locker, Murphy & Murphy* and *C. H. Shubert* for appellant.

(1) Under the authority of the case of Johnson v. Latta, 84 Mo. 139, it is the duty of this court to fully review the action of the circuit court in this kind of a proceeding, whether the objections thereto are fully set forth in a motion for new trial or not. Bruce v. Vogel, 38 Mo. 100; Slagel v. Murdock, 65 Mo. 522. Meyer v. Nickerson, 101 Mo. 184, lays down this rule: "If existing incumbrances are not taken into account in locating the homestead, the remedy of the execution defendant is to proceed by motion in the same cause to have it done. If he does not thus directly attack the designation of his homestead, he can not afterwards, in a collateral proceeding, have the action of the appraisers reviewed." (2) That was an ejectment suit against execution defendant in which he sets up that there was an incumbrance on his lands not taken into account in fixing his homestead, and insists he was therefore entitled to have been allowed also the tract of land that was sold. * * * The present appeal is necessary in order that the action of court quashing levy of execution, and finding against plaintiff on motion to discover assets, shall not become *res adjudicata.* Johnson v. Latta, 84 Mo. 139. (3) Under that case, on appeal, the judgment of this court would be simply to affirm or reverse the action of the circuit court in quashing the levy, and to affirm or reverse its finding on the proceedings to discover assets, and to determine whether the statute with respect to these supplemental proceedings is to be regarded as a dead letter or entitled to be respected. State ex rel. Ames v. Barclay, 86 Mo. 55. In

the case at bar we have a defendant securing for himself the real and personal exemptions allowed by law, and also a third exemption of over fourteen hundred dollars by fraud and concealment. And it may be that the law would be lame and weak enough to permit him to enjoy the fruits of his illegal concealment and gain in a mere proceeding by levy of execution. But if it can be said that the execution law thus fails of enforcing justice, still we can safely say that any such lack of power is fully supplied and made up by the supplemental proceedings to discover assets. The court, in the present state of this case, has every power and jurisdiction to probe and inquire into the means of defendant to pay upon this judgment, and determine his good faith in asking protection of the law.

*Joe. McGregor* for respondent.

(1) The sole question involved in this appeal is the construction of the homestead law, the object of which is said to be based upon the idea that as a matter of public policy, for the promotion of the prosperity of the state, and to render independent and above want each citizen of the government, it is proper he should have a home—a homestead—where his family may be sheltered and live beyond the reach of financial misfortune and the demands of creditors who have given credit under such law. It is further said that this policy is "liberal" and benevolent" and "is a beneficent provision for the protection and maintenance of the wife and children against the neglect and improvidence of the father and husband" and that its design is, not only to protect citizens and their families from the miseries and dangers of destitution, but also to cherish and support in the bosom of individuals those feelings of a sublime independence which are essential to the maintenance of free institu-

tions. If the whole of the debtor's wealth is in his homestead, it is free from the reach of creditors. Finley v. Detrick, 12 Iowa, 516. (2) Creditors have no interest in the homestead when the right has attached. Kendall v. Powers, 96 Mo. 142. A debtor who holds a homestead exempt from execution for his debts must take and hold it subject to fluctuation in value. Becker v. Rule, 91 Mo. 62. Judge Black, speaking for the court, says: "The debtor may have a homestead but he must take and hold it subject to the fluctuations in value. If, in course of time, it should increase in value, so as to be worth more than the statutory limit, it may be assigned again, and the excess applied to the payment of his debts. If the assigned homestead should depreciate in value, he may add to it and claim a re-valuation himself." It is said in the agreed statement of facts in relation to the homestead at the time the levy was quashed, "That the 160 acres now in question is not worth exceeding the sum of $1,500, and that the defendant lives thereon, and has lived thereon ever since the judgment was rendered, and that he is the head of a family and has been at all of said times."

BLAND, P. J.—At the March term, 1898, of the Pulaski Circuit Court, Mary C. Patton recovered a judgment of $1,500 against the respondent herein, which judgment she duly assigned to the appellant herein. An alias execution was issued on said judgment and a levy made on 160 acres of land as the land of respondent. A motion to quash this levy was filed and sustained, wherefore this appeal was taken.

The motion to quash was sustained on the following agreed statement of facts:

"Upon the hearing of this motion it was agreed in open court as follows. This judgment was rendered in the circuit court of Pulaski county, Missouri, at the March term, 1898,

and execution was issued thereon returnable at the September term, 1898; that prior to the time at which the cause of action accrued, the defendant was the owner of three hundred and sixty acres of land, his deed being of record, and that he resided upon the same as his homestead; that at the time said judgment was rendered there was a deed of trust on the said three hundred and sixty acres of land, for the sum of one thousand dollars, and interest amounting to about one hundred and eighty dollars; that under the execution issued under said judgment the sheriff levied upon said three hundred and sixty acres of land and defendant claimed his right of homestead thereunder; that commissioners were appointed and they set out to defendant as his homestead, and he accepted the said one hundred and sixty acres of land now levied upon; that at the time of the levy of the first execution defendant had fourteen hundred and fifty-one dollars in cash which he did not return to the sheriff; that at the September term, 1898, under said execution, the two hundred acres of land were sold; the defendant claimed all his personal property exempt, and was all set apart to him by the sheriff, except, however, that no mention was made of the money above referred to; that the two hundred acres of land not set apart to the defendant as a homestead was sold under said execution at the September term, 1898; that after said sale the defendant took the sum of eleven hundred and eighty dollars in cash which he had and which he did not return to the sheriff, and paid off and discharged the deed of trust above referred to, thereby relieving the homestead set apart to him as well as the other land sold from the lien of said deed of trust; that the two hundred acres were bought by the plaintiff in execution for the sum of one hundred and fifty dollars, and is now held by him; that the one hundred and sixty acres now in question is not worth exceeding the sum of $1,500, and that the defendant lives

thereon and has lived thereon ever since the judgment was rendered, that he is the head of a family, and has been at all of said time; that he had other property outside of the cash, aforesaid, in amount equal to the personal property exemptions allowed by law, which was set out to him by the sheriff and by the commissioners, and that the report of the commissioners was silent as to any lien on the homestead, or whether it was taken into consideration."

It further appears that at the September term, 1898, of the court, the appellant procured the appointment of a referee to take testimony to discover assets; that the referee in pursuance of his appointment examined the respondent, who disclosed under oath that at the date of the rendition of the judgment, at the date of service of the first execution and at the date of his examination he had in cash $1,451, which he concealed from the knowledge of the sheriff; $1,180 of this money he afterwards applied in payment of a mortgage on the three hundred and sixty acres of land mentioned in the agreed statement of facts. If we correctly comprehend the contention of appellant, it is in substance this; that it was the duty of the respondent, when the first execution was served on him, to have given up the $1,451 in cash he then had on his person to the sheriff to be applied on the execution; that by failing to do this and instead having used a part of this money to discharge a lien upon his homestead, and being without other property subject to sale on execution, appellant now has the right to sieze and sell the homestead in order to reach the fund invested in it which should have been paid on the first execution. A creditor having a lien upon a particular fund may in equity follow that fund in the hands of his creditor or his assignee with notice, notwithstanding the debtor may have converted the fund into other property, real or personal or both, but he can not do

this without a lien, nor can he ordinarily enforce his equity by the mere levy of an execution on the property in which the fund has been invested. The first execution was not levied on the money, and appellant acquired no lien thereon. But he claims that having discovered the asset he has a right to it, or to follow it, and take it out of the homestead where a part of it was invested in the discharge of the mortgage. When the referee made his report the judge of the court, in compliance with section 3230, Revised Statutes 1899, delivered an opinion in writing to the effect that respondent had the right to use the money to pay the mortgage on his homestead, and that the homestead was not subject to sale on the execution. This opinion of the court has not the force and effect of a judgment and can not be appealed from. The whole scope of the statutes to discover assets (sections 3227, 3228, 3229 and 3230, R. S. 1899), is as they purport to be, to discover assets, to compel the defendant in the execution, to disclose under oath, all the assets of his estate, and after the discovery to leave it to the judge or court to say, whether or not he has assets which may be levied on by execution in favor of the judgment creditor. If the judge errs in his judgment and the creditor is aggrieved thereby, his only remedy is to do as appellant did in this case —make his levy on the property he claims subject to levy, and test his right to the levy on motion to quash. It seems to us that the judge did not err in his judgment when he found that respondent had a right to use the money to pay the mortgage on his homestead; nor did he err when he ruled that the homestead was not subject to the execution and quashed the levy. It was the duty of the appraisers to take the mortgage into account when they set off the homestead. Section 3618, R. S. 1899; Meyer v. Nickerson, 101 Mo. 184. Their failure to do this did not deprive the respondent of his right under the homestead law, to have

the mortgage taken into account, when this right was called into question by the appellant, nor hinder him from removing the incumbrance after the homestead had been set off. Under the law he was entitled to a homestead exempt from sale on the execution, not exceeding in valuation $1,500, and in land one hundred and sixty acres free of incumbrance. The agreed statement shows that he got this and no more. Judgment affirmed. Judge *Bond* concurs; Judge *Biggs* absent.